IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | 1:20cv80 |
| v. | ) | 1:12cr70 |
| | ) | **Electronic Filing** |
| **ZAVIA L. JOHNSON** | ) | |

## <u>OPINION</u>

On December 12, 2012, a grand jury returned a one-count indictment against Zavia L. Johnson ("defendant") charging him with possession with the intent to distribute 100 grams or more of heroin, on or about November 2, 2012, in violation of Title 21, United States Code, §§ 841(a)(1) and 841(b)(1)(B)(i).  After pretrial development, a suppression hearing, jury selection and the commencement of trial, defendant pled guilty on December 9, 2016.  He was sentenced on April 10, 2017, to 180 months of imprisonment and 10 years of supervised release. Presently before the court is defendant's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.  For the reasons set forth below, the motion will be denied.

The history of this case as it relates to defendant's motion accurately is recounted in the government's response to defendant's motion to vacate.  On November 2, 2012, Pennsylvania State Police Trooper Gary Knott conducted a traffic stop of the vehicle defendant was driving. The circumstances surrounding the stop and those that arose in the immediate aftermath led Trooper Knott to request the assistance of a certified drug detection canine unit.  Upon arriving on the scene, the canine, known as "Iggy", engaged in behavior referenced as "air scenting," barked and jumped on the trunk of the car, and displayed other signs consistent with an "alert." Iggy did not give a positive "indication" to any specific location within the car.  At that juncture Trooper Knott seized the vehicle and drove defendant to a bus station.

In the process of applying for a warrant to search the vehicle, Trooper Knott learned that the magisterial district judge would not be available for another four hours. He then sought and obtained permission to conduct an inventory search of the vehicle from his supervisors. That search uncovered large sums of cash and bricks of heroin in the trunk. The vehicle was relocated to a secured location and defendant was arrested. A magisterial district judge thereafter issued a search warrant for the vehicle. Execution of the warrant resulted in the seizure of 175 bricks of heroin, $7,000.00 in cash, "owe sheets" appearing to reflect drug transactions, and a hotel receipt from the previous night with defendant's name on it. All of these items were in the trunk of the car.

Defendant moved to suppress the fruits of the search based on several grounds, including the contentions that probable cause did not exist and Trooper Knott had unlawfully extended the duration of the traffic stop. Defendant also challenged the content of the affidavit of probable cause, contending that false statements and misleading omissions had been submitted to the magisterial district judge.

Judge Maurice B. Cohill held a two-day suppression hearing. The government submitted testimony from Trooper Knott, Corporal Peters and Corporal Ruhf. Corporal Ruhf was a certified canine handler with responsibility for training and certifying police canines.

Prior to the hearing, defendant issued a Rule 17 subpoena directly to the Pennsylvania State Police seeking information surrounding the training and certification of the canine unit. The subpoena was quashed by the court. Thereafter, the government agreed to seek "any discoverable material concerning the canine detection team's training, reliability, and certification. After consultation with the Governor's Office of General Counsel, on April 4, 2014, the United States came into possession of materials responsive to [the government's] request for the canine team records." Government's Motion for Protective Order (Doc. No. 39 at

2

p. 1-2.  The government then sought and obtained a protective order governing the disclosure of the information produced to the defendant's expert witness.  Id.   Among other documents, the defense received: the PSP Drug Detector Dog Certification and Certification Record for Canine Team #54, dated October 22, 2012; the PSP Drug Detector Dog Certification and Certification Record for Canine Team #54, dated October 16, 2013; the PSP Canine Section Utilization Report, dated 11/2/12; the PSP Report by Cpl. Brian Peters, E01-1512464, dated 11/02/12; and the PSP Canine Section, Narcotic Detection, Monthly Canine Training Summaries and Drug Detection Canine Training Reports for Team #54 from June 2012 through November 2012.  Id. at p. 2.  The government also disclosed "the Standard Operating Procedures manual and the training lesson plans in effect when canine team 54 first received certification," which had been redacted to remove "information not pertinent to canine team 54's training . . . ."  Id.

The court granted the government's motion for a protective order and the use of the information disclosed was limited to the case.  Protective Order of April 23, 2014 (Doc. No. 40).  Content within the disclosed training lesson plans and Standard Operating Procedures manual contained "sensitive law enforcement training information regarding operational capabilities, deployment tactics, and training techniques."  Motion for Protective Order at p. 3.

The court issued an opinion denying defendant's motion to suppress on March 30, 2015.  A central issue underlying the determination of probable cause by the court was the testimony from the officers about whether Iggy displayed "alert" behavior when brought to the scene.  The background of the training program and details about the training process were introduced and considered in evaluating the officers' testimony about the significance of Iggy displaying "alert" behavior as opposed to displaying an "indication" that controlled substances were present in the vehicle.  Opinion of March 30, 2015 (Doc. No. 51) at p. 18-20 & n.1.  Defendant maintained that

the officers' testimony was inconsistent on this point.  In rejecting this and other arguments of

defendant, the court opined:

> We disagree with Mr. Johnson's conclusion.  Mr. Johnson's argument ignores all but a
> narrow portion of the extensive testimony and evidence offered by Corporal Ruhf and
> Corporal Peters that show, among other things, that the drug detection team of Corporal
> Peters and Iggy has had continual training and multiple certifications on a monthly basis
> from 2007 through 2012, one that occurred the day prior the incident in this case.
>
> In addition, although both witnesses testified that dogs are not trained in alert
> behavior, they also testified at length about what alert behavior is, what drives it in dogs,
> and how a handler would be able to recognize alert behavior.  Corporal Ruhf testified that
> a handler is supposed to be able to recognize alert behavior, and is in fact the person who is
> best capable of recognizing alert behavior. Tr. 5/20/14, at 204, 209, 220.  He further
> testified that alert behavior is a spontaneous reaction to an odor, that drug detection dogs
> are conditioned to respond to the presence of drug odors, and that the change in behavior in
> the dog when drugs are detected is different from the dog's ordinary reaction to the
> presence of other environmental odors.  Tr. 5/20/14, at 216, 220.  Corporal Ruhf
> consistently testified that he could not reach a conclusion as to whether Iggy alerted based
> on the dashboard video.
>
> Corporal Peters testified that even before he started the formal search of the vehicle he
> had observed alert behavior in Iggy "consistent with his alert to odors he has been trained
> to detect." Tr. 6/26/14, at 24.  He explained that when Iggy encounters an odor he has
> been trained to detect "his behavior changes, and I'm trained to observe that change in
> behavior." Tr. 6/26/14, at 34.  He testified that alert behavior is instinctual. Tr. 6/26/14, at
> 48. He explained that when a dog first encounters an odor he is trained to detect there is an
> increase in his respiration rate and a change of posture.  Tr. 6/26/14, at 40.  Corporal Peters
> therefore concluded that Iggy had alerted to the presence of a drug he was trained to detect.
>
> We do not see any inconsistency between Corporal Ruhf's testimony and Corporal
> Peters' testimony.  Corporal Peters' testimony, as well as his police report, demonstrates
> that Iggy had alerted to the presence of drugs.  The fact that Iggy did not indicate in this
> case does not detract from the alert behavior observed by Corporal Peters, but instead
> shows that for whatever reason Iggy was not able to locate the source of the drugs.  It is
> undisputed that Corporal Peters and Iggy are a trained, certified, and reliable drug
> detection canine team.  Once Corporal Peters informed Trooper Knott that Iggy had alerted
> to the presence of drugs, combined with the observations indicating that criminal activity
> may be afoot already observed by Trooper Knott, we find that probable cause to seize and
> search the vehicle existed.

Opinion of March 30, 2015 at p. 18-20.

In reaching the determination that probable cause existed, the court specifically noted the

"considerable" testimony by the officers regarding the extensive training program and

certification process required for drug detection canine teams and the training and certification

processes Corporal Peters and Iggy had undergone, all of which was supported by documentary evidence.  Id. at p. 18-19, n.1.

Defendant appealed his judgment of conviction.  "On appeal, Johnson challenge[d] the duration of the traffic stop, the existence of probable cause to seize the rental vehicle he was driving, and the omission of certain facts from the officer's affidavit of probable cause presented in support of a search warrant application."  Opinion of July 31, 2018 (Doc. No. 110-2) at p. 2. The United States Court of Appeals for the Third Circuit affirmed defendant's judgment of conviction pursuant to a 12 page opinion considering at length defendant's challenges to the denial of his suppression motions.  Id. at 12.

Defendant raises the following issues in support of his § 2255 motion: 1) whether the District Court's finding that Iggy "alerted" as part of proving the existence of probable cause was clearly erroneous because it was belied by the video and audio recordings of the stop; 2) whether the affidavit recklessly or deliberately contained false statements or omissions that were material to the finding of probable cause; 3) whether the duration of the stop was unreasonable under the Fourth Amendment; and 4) whether the Third Circuit misapplied the law and inappropriately credited police officer testimony that clearly was contradicted by recordings of the stop.  Exhibit to Motion to Vacate (Doc. No. 119-1) at p. 1-2.  Defendant raises the following as reflecting the ineffective assistance of counsel: 1) counsel failed to make the court aware that the training manual received by the defense had been redacted and did not contain definitions on the key terms of "air scent" and "alert" which were used interchangeably to justify the seizure of defendant's vehicle - thereby depriving defendant of the ability to contest Trooper Knott's testimony; and 2) appellate counsel failed to argue that when the government removed defendant's access to these key terms in the training manual, it deprived defendant of his constitutional right to due process.

The government opposes the motion on the grounds that 1) it did not redact definitions of the identified terms from the training manual, 2) the court was fully apprised of the redactions that were made to the manual, and 3) the terms "air scent" and "alert" were litigated fully at the suppression hearing and on direct appeal.  It thus maintains that defendant is not entitled to relief. We agree.

A § 2255 motion may be disposed of summarily where the motion fails to set forth a basis upon which relief can be granted or where the factual allegations advanced in support of the motion are vague, conclusory or patently frivolous.  See Rule No. 4 of the Rules Governing § 2255 Proceedings; Blackledge v. Allison, 431 U.S. 63 (1977); Page v. United States, 462 F.2d 932, 933 (3d Cir. 1972) (where the record affirmatively indicates that a claim for relief is without merit, it may be decided summarily without a hearing).  In Government of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985), the United States Court of Appeals for the Third Circuit stated:

> A Section 2255 motion is addressed to the discretion of the trial judge in the first instance and where the record affirmatively indicates the claim for relief is without merit, the refusal to hold a hearing will not be deemed an abuse of discretion.

Id.; accord United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000).  Other courts have reached the same conclusion.  See Baumann v. United States, 692 F.2d 565, 572 (9th Cir. 1982) (proper for district court to dismiss portion of § 2255 petition without evidentiary hearing where allegations conclusively failed to state a claim for relief); United States v. Oliver, 865 F.2d 600, 604 (4th Cir.), cert. denied, 493 U.S. 830 (1989) (district court may dismiss § 2255 petition pursuant to Rule 4(b) where record conclusively demonstrates that movant is not entitled to relief as a matter of law); Mathews v. United States, 11 F.3d 583, 584-86 (6th Cir. 1993) (where § 2255 petition raises no factual disputes and bases for relief are without merit, district court need not hold an evidentiary hearing and may dismiss the motion summarily).

It is well settled that a motion pursuant to § 2255 may not be used to relitigate matters already decided on direct appeal.  <u>Government of Virgin Islands v. Nicholas</u>, 759 F.2d 1073, 1074-75 (3d Cir. 1985); <u>United States v. Orejuela</u>, 639 F.2d 1055, 1057 (3d Cir. 1981).  And this applies not only to matters that were actually raised, but to any trial matters that could have been raised on direct appeal but were not for strategic or other reasons.  <u>United States v. Frady</u>, 456 U.S. 152, 164-65 (1982); <u>Konigsberg v. United States</u>, 418 F.2d 1270, 1273 (3d Cir. 1969) ("Where a federal court had an opportunity to consider the merits of the contention it is within the discretion of the § 2255 court whether or not to relitigate the issue"); <u>accord</u> <u>Kohlmiller v. United States</u>, 2010 WL 3270753 (W.D. Pa. August 18, 2010) (same) (collecting cases in support).

The issues surrounding the controverted evidence of an "alert" by Iggy and the repercussions of the officers' testimony about what they witnessed on November 2, 2012, and its impact on the analysis of defendant's motion to suppress were fully litigated.  A substantial portion of the suppression hearing was focused on these aspects of the seizure.  During the hearing the fact that the manual had been redacted to remove information "not pertinent to the training of Iggy and more specifically pertinent to the training of a drug detection canine" was acknowledged on the open record by Corporal Ruhf, a certified canine handler and trainer responsible for all of the 25 canine teams in Pennsylvania at that time.  May 20, 2014, Testimony of Corporal Ruhf (Doc. 42-3 at p. 34).

Moreover, a copy of the manual was admitted into evidence.  The court had access to it and was able to discern that the relevant portions were available for review in relation to the proffered testimony.  It wrote an opinion focusing on the central issues raised by the testimony and evidence surrounding Iggy's behavior.  There is not one scintilla of evidence to suggest the

court thought a pertinent portion of manual had been redacted.  Defendant has failed to identify

any factual basis to support his contention to the contrary.

      The court's Opinion and Order of March 30, 2015, directly resolved the substantive issues

underlying defendant's current motion pursuant to § 2255.  Those issues were unavailing then

and they continue to be unavailing today.

      And the Court of Appeals likewise reviewed the record and upheld the denial of

defendant's motion to suppress.  It opined:

> "[A] dog's positive alert while sniffing the exterior of the car provides an officer with
> the probable cause necessary to search the car without a warrant."  United States v. Pierce,
> 622 F.3d 209, 213 (3d Cir. 2010) (citations omitted).  As testified to by the officers in this
> case, an "alert" is instinctual behavior displayed by a drug detection dog that includes
> "increased respiration and change in body posture when the dog initially encounters the
> odors he's trained to detect." (App. at 374.)
>
> Johnson claims that the dashboard camera footage belies the District Court's finding
> that Iggy alerted.  Johnson further maintains that Iggy's failure to alert dispelled suspicion
> that his vehicle contained drugs.
>
> Admittedly, the dashboard footage is somewhat ambiguous.  For instance, Corporal
> Peters and Trooper Knott can be heard discussing Iggy's behavior, where Corporal Peters
> seemed to express frustration with Iggy's performance during the sniff.  Corporal Ruhf
> also testified that, after reviewing the video, he could not say either way whether Iggy
> alerted.  (App. at 345.)  Nevertheless, the record contains sufficient evidence to support the
> District Court's finding that Iggy alerted.  For example, in his supplemental investigation
> report, Corporal Peters wrote that, prior to the search, Iggy first alerted by "lift[ing] . . . his
> nose high and . . . sniffing the air with increased respirations."  (Id. at 549.)  Corporal
> Peters then wrote that Iggy alerted during the car scan by "lifting his head up over the
> trunk lid and stretching his neck out to sniff higher on the trunk deck." (Id.)  We also
> agree with the government that, in light of the fact that Corporal Peters and Iggy had been
> a unit since 2007 and underwent their most recent training one week before the traffic stop,
> "Corporal Peters . . . [was] in the best position to interpret his canine's response . . . ."
> (Appellee's Br. at 26.)  We thus conclude that it was not clear error to find that Iggy alerted
> and that, based on the alert and other factors observed by Trooper Knott, probable cause
> existed to seize and search the car.

Third Circuit Opinion of December 7, 2018 (Doc. No. 110-2), a p. 10-11.

      It is clear that the central focus of both this court and the Court of Appeals was on the

actual testimony of the officers about whether Iggy's behavior signified an "alert" and the other

components of the record that supported a finding of probable cause.  Defendant may not

relitigate such matters through a § 2255 motion.

Defendant's efforts to recycle his substantive disagreements with the outcome of his case

by recasting them as ineffective assistance of counsel claims equally are unavailing.  A two-part

test is utilized to assess an ineffective counsel claim.  See Strickland v. Washington, 466 U.S.

668 (1984).  The first prong requires the petitioner to demonstrate that counsel's performance

was deficient.  This requirement is met where "counsel made errors so serious that counsel was

not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Flamer v.

State of Delaware, 68 F.3d 710, 728 (3d Cir. 1995) (quoting Strickland, 466 U.S. at 687)).  This

prong requires proof that counsel's performance fell below an objective standard of

reasonableness under the prevailing professional norms, which existed at the time.  Id.  The

assessment begins with a "strong presumption that counsel's conduct falls within the wide range

of reasonable professional assistance" and the court's scrutiny of counsel's performance is to be

highly deferential.  Id.  (citing Strickland, 466 U.S. at 689); see also Government of Virgin

Islands v. Weatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996).  The assessment of counsel's

performance must be made in light of all the circumstances and the ultimate objective of assuring

vigorous advocacy of the petitioner's defense.  Id.  It also must be made without the "distorting

effects of hindsight" and the petitioner has the burden of overcoming the strong presumption that

counsel was effective.  United States v. Kissick, 69 F.3d 1048, 1054 (10th Cir. 1995).

The second prong of the Strickland analysis requires a showing that counsel's

ineffectiveness was prejudicial.  Flamer, 68 F.3d at 728.  This prong requires a petitioner to

demonstrate that but for counsel's unprofessional errors, there is a reasonable probability that the

result of the prosecution would have been different.  In this context "[a] reasonable probability is

one which is 'sufficient to undermine confidence in the outcome.'"  Id. (quoting Strickland, 466

U.S. at 694).  The assessment cannot be based upon generalities, but instead must be based upon a demonstration of how the "specific errors of counsel undermined the reliability of the [outcome]."  Flamer, 68 F. 3d at 729 (quoting United States v. Cronic, 466 U.S. 648, 659 n.26 (1984)).  Where the alleged error is based upon a failure to make a reasonable investigation or the election to pursue one defense over another, a heavy measure of deference must be accorded to counsel's judgment.  As long as there was a reasonable basis for counsel's strategic decision, counsel may not be found to be ineffective.  See Weatherwax, 77 F.3d at 1432.

Here, defendant asserts that trial counsel's failure to make the court aware that the key terms of "air scent" and "alert" were redacted from the manual deprived him of the ability "to definitely contest Trooper Knott's actions, thus, depriving him of his Constitutional Right to effective assistance of counsel.  And "when appellate counsel failed to argue" that trial counsel did not make the court aware of the redaction of these key terms from the manual or argue that the government's redaction of the key terms deprived defendant of his right to due process, appellate counsel deprived defendant of effective representation.  Supplement to Defendant's Motion (Doc. No. 119-1) at p. 3.

As noted by the government, defendant's submissions fail to establish a deficient performance or prejudice by either trial or appellate counsel.  The record belies any basis to credit the assertion that the government manipulated the redaction process in a way that deprived defendant of access to all relevant data surrounding the training of Iggy and his behavior on the date of the seizure.  The record was devoid of any basis for trial counsel to argue that material terms had been inappropriately redacted.  And in this regard it appears that defendant does not appreciate that all lawyers who appear before the court must conform their advocacy to required levels of professional conduct and certain ethical standards.  They may not advance a factual position or argument when a basis for such a claim does not exist in the record.  That is exactly

what occurred here.  And defendant has failed to advance any actual evidence or information supporting his bald assertion.  Thus, defendant cannot show that trial counsel rendered a performance that fell below the requirements of the Sixth Amendment.

Nor can defendant demonstrate that appellate counsel provided a defective performance by failing to raise the issue of prejudicial redaction on appeal.  The same reasons that precluded trial counsel from doing so applied with equal force to appellate counsel.  But even assuming that counsel could have raised such a claim on appeal, the record nevertheless fails to establish that appellate counsel's performance was deficient.

The Supreme Court long ago recognized that while a defendant has the unfettered right to appeal, an indigent defendant does not have a constitutional right to insist that appointed counsel pursue each and every nonfrivolous point the defendant can identify.  Jones v. Barnes, 463 U.S. 745, 753 (1983).  To the contrary, "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review."  Id.  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  Id. at 751-52.   In the end, "the choice of what specific arguments to make within that appeal belongs to appellate counsel."  Garza v. Idaho, 586 U.S. --, 139 S. Ct. 738, 746 (2019).

"This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  Smith v. Murry, 477 U.S. 527, 536 (1986) (quoting Jones, 463 U.S. at 751-52).  "Attorneys 'need not, and should not, raise every . . . claim but rather may select among them in order to maximize the likelihood of success on appeal.'"  United States v. Turner, 677 F.3d 570, 577 (3d Cir. 2012) (quoting Showers v. Beard, 635 F.3d 625, 634 (3d Cir.2011) (citing

Smith, 528 U.S. at 288).  "Indeed, an appellate lawyer's exercise of professional judgment in omitting weaker claims is obviously of benefit to the client: the more claims an appellate brief contains, the more difficult for an appellate judge to avoid suspecting that there is no merit to any of them."  Id. at 577-78 (quoting Johnson v. Tennis, 549 F.3d 296, 302 (3d Cir. 2008) and citing Ruggero J. Aldisert, THE APPELLATE BAR: PROFESSIONAL COMPETENCE AND PROFESSIONAL RESPONSIBILITY—A VIEW FROM THE JAUNDICED EYE OF ONE APPELLATE JUDGE, 11 Cap. U. L. Rev. 445, 458 (1982) ("Appellate advocacy is measured by effectiveness, not loquaciousness.")).

In evaluating which issues to raise and in choosing between the issues that present themselves, Strickland permits counsel to 'make a reasonable decision' about such matters.  Cf. Harrington v. Richter, 562 U.S. 86, 106 (2011) (In evaluating whether a defense is best pursued through the use of an expert or one expert over another, Strickland "permits counsel to 'make a reasonable decision that makes particular investigations unnecessary.").  This is so because there are "countless ways to **provide** effective assistance in any given case."  Id. (quoting Strickland, 466 U.S. at 691) (emphasis in original).  "Rare are the situations in which the wide latitude counsel must have in making tactical decisions will be limited to any one technique or approach."  Id. at 789.

Defendant has merely identified potential issues appellate counsel could have explored. He has not demonstrated that counsel's decision as to which issues to raise on appeal was deficient.  There is nothing in the court's record or the information submitted by defendant to raise even the specter of a deficient performance.  To the contrary, it is quite clear that there were substantial issues to be presented on appeal and appellate counsel skillfully pursued and presented them.  Complying with standards protected by Strickland does not require that appellate counsel raise issues that would have detracted or impaired the presentation of the issues most likely to prove meritorious.  And defendant's disappointment with the appellate court's

ruling does not convert insignificant and unsupportable issues into ones that may now serve as a basis for finding an unconstitutional performance.

Similarly, defendant has failed to provide any basis to find that he was prejudiced by the performance of either trial or appellate counsel.        As Judge Cohill observed, considerable evidence was proffered by the government and admitted concerning the extensive training program and certification process, both in general and specifically as to Iggy and Corporal Peters.  Opinion of March 30, 2015 (Doc. No. 51), at p. 18, n.1.  Corporal Ruhf and Corporal Peters testified in detail about "what alert behavior is, what drives it in dogs, and how a handler would be able to recognize alert behavior, and is in fact the person who is best capable of recognizing alert behavior."   Defendant's submissions in support of his current motion make clear that there was substantial testimony about the terms "air scent" and "alert" taken at the hearing.  See generally Exhibit to Motion to Vacate (Doc. No. 119-1).  The terms were fully litigated.  In the end, it was the actual testimony on these matters given by the officers that the court found persuasive.  See Opinion of March 30, 2015, at 18-19; Opinion of April 13, 2018 (Doc. No. 110-2), at p. 10-11.  Defendant has not identified anything beyond rank speculation to suggest that further cross examination about the concepts of "air scent" and "alert" would have changed the outcome of the case.  Consequently, he has failed to advance a sufficient basis to warrant further proceedings on the prejudice prong of the Strickland analysis.

Defendant has not identified any basis that suggests or implies his constitutional rights were violated.  He has not advanced any specific instances of trial or appellate counsel's performance that could amount to a form of inadequate representation.  Nor has he identified an error that even creates the specter that a different outcome might have been reached had counsel performed some other task or undertaken some other tactic.  This is understandable because, contrary to defendant's bald assertions, counsel were quite effective in their representation of

13

defendant given all the attendant circumstances.  The issues of which he complains were fully and fairly litigated and his Monday morning efforts toward changing the result are undermined sufficiently by the record.  Consequently, defendant is not entitled to relief pursuant to his claims of ineffective assistance of counsel and orders denying his motion and dismissing the proceeding will be entered.

Date: September 18, 2023

s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc:    Molly W. Anglin, AUSA

      (*Via CM/ECF Electronic Mail*)

      Zavia L. Johnson
      #34309068
      Green Haven
      Federal Correctional Facility
      P.O. Box 4000
      Stormville, NY 12582-4000

      (*Via United States Postal Service Mail*)